OPINION OF THE COURT.--Bv the
Hon. JOHN BLACK.
It appears that the judgment at law, which the complainants, Head and Davis, have enjoined by this bill, was obtained against them by S. D. Ger-vais, one of the defendants — was paid by Morse, the other defendant, at the instance and request of complainants.
This judgment, on being paid by Morse, was assigned to him by the attorney at law, of record, of said Gervais; Morse claiming to have the benefit of this judgment at law, and execution by virtue of this assignment,, the first question is, whether it it is sufficient in law to vest in him an interest? There can heno doubt that an attorney at law, as such, has no power to assign a judgment of his client..
Mr. Sharkey, who was the attorney, does not state, in his deposition, that he was’ specially authorized by Gervais, to assign this judgment, but *435 thinks he must have been, or he would not have assigned it. His deposition is very vague and uncertain throughout, and by no means sufficient So establish the fact that he was authorized, as attorney in 'fact of Gervais.
Downs, in his deposition, states th.-.t he hoard Gervais say that he was willing, under certain restrictions, to let the judgment be assigned to Morse. But his being willing that it should be done, was not doing it;— much less does it prove that Mr. Sharkey was authorized to do it, as his agent: and this latter fact, Gervais, in his answer, expressly denies.
With respect to this assignment, there is also one thing to be borne in mind, that is — that this was not a purchase of this judgment from Gervais, but the money was advanced by Morse, on the request of complainants, and for their accommodation. Morse went forward as their friend, to pay off this judgment; to save their property from sacrifice by sale, on the faith of a promise made by them to put cotton in his hands, to a sufficient amount to cover, as well this advance, as debts they were owing him on other accounts.
This being a payment of this judgment by Morse, as the friend of complainants; under these circumstances, and not a bare contract with Ger-vais, for the purchase of this judgment against complainants, it would seem necessary, in order that Morse should obtain the use of the judgment, and continue the lien under it in his favor, that it should appear not only that Gervais did assign the judgment, but that the defendants consented that it should be assigned to, and kept open by, him. Otherwise, it could be considered in no other light than a payment of the judgment by complainants, through their agent and friend, Morse. The answer of Morse distinctly alleges the fact of consent, on the part of complainants to this judgment being assigned to him; but the allegations of the bill are to the contrary, and the oaths of complainants taken before the commissioners; and there is no proof in the cause to show that they gave such consent in any way.
Both of these objections to Morse’s claiming under this judgment, by this assignment, and to issue an execution on it, for his own benefit, under the circumstances appear to be insurmountable.
Firstly — That there is not satisfactory evidence to show that Shar-key was authorised as attorney in fact, to assign this judgment.
*436 Secondly — It should appear, not only that this judgment was legally assigned, but that complainants consented that it should be assigned.
The result is, that defendant, Morse, is not entitled to any remedy, by-execution on this judgment at law, to re-imburse him for his advances made, and, having attempted to enforce it by an action on this supposed assignment, should have been perpetually enjoined by a decree of the chancellor from attempting further to enforce it.
Here it is insisted by the complainant’s solicitor, that the decree should stop; that the payment, or non-pat n ent of the judgnent was-the only question before the court, and if the court determine Gervais not to be entitled, they can gp no further. '1 here can be no doubt but that a dt fend-ai)t may, ip many cases, when he sets up pay merit of a judgment obtained in a court of law, go into a court of equity, and by the origi lal bill,set up such defence, and have the plaintiff at law perpetually enjoined from further proceedingson such judgment. He may do it more especially, when the facts are complicated and pay mem disputed, as Ure court of chancery, in such case, can afford fuller and more ample relief than a court of law can on motion, or audita querela.
A bill properly framed might unquestionably be made to embrace that question alone; and this bill might have been so drawn as to have brought that alone in controversy.
The bill of complainants in this case alleges payment and satisfaction of thejudgment by this advance of Morse on their account, but does not stop there: it alleges repayment, in full, to Morse, of the money so advanced by him, and states numerous circumstances relative to shipments of cotton, receipts passed from Mo.rse to complainants, drafts drawn by complainants on New Orleans, going minutely into an account olall the transactions between complainants and defendant, Morse.
To this bill, defendant has filed a long and explanatory answer, in which the matters of fact stated appear supported fully by proof. The bill appears to be, in its nature, a general bill to account. The chancellor has ordered an interlocutory decree, referring it to commissioners to take, and state an account of the matters of charge and discharge mentioned in ¡the bill and answer.
The commissioners, in pursuance of this decree, have reported balances *437 «fue, of different amounts from each of the defendants respectively. An objection that the chancellor has taken notice of all the allegations of complainants’ bill appears, at this late hour, to come with an especial ill-grace; and it will not do for them to say that the chancellor should have noticed some parts of the hill and not others; all obligations relative to transactions which would result in their favor, and exclude those which have resulted in their indebtedness. It would result in much mischief if complainant were permitted to bring his case into court, set it for hearing on certain allegations of the bill, and answer; relative to which much proof has been taken; and then, when a balance is found against him, on these trans ictions, which he has himself drawn in controversy, to object to the jurisdiction of the court as to those matters.
The conclusion is that the complainants are properly chargeable with the sum, reported by the commissioners to be due from each to the defendant Morse. It may be proper here to notice an objection made by one of complaiuaut’s counsel on account of the apparent earnestness with whic- it was argued, to any decree being made in favor of Morse against complainant. It was said that there dues not appear to have been any indebtedness at the time this bill was filed. The first answer to this objection is, that it is one which ought to have been made by way ot exception to the report of the commissioners, in allowing the demands of defendant. They have reported certain amounts due the defendant, and this exception goes to the propriety of their determination.
But waiving that objection, let us examine the facts as presented by the proofs in the cause:
It appears that on the 2d of October, 1826, complainant and defendant, Morse, entered'into an arrangement, by which complainants drew drafts for the amounts they were severally indebted at that time to Morse, and were by agreement to have placed funds in the hands of' the acceptors to meet the drafts at maturity, and in order to have the drafts negotiated.— Morse became guarantor to complaina.ints in an obligation given to the acceptors that complainants would comply with this stipulation. Receipts were then given by Morse to complainants, expressing to be in full when complainants should comply with their undertaking to have funds placed in the hands of the acceptors of the drafts. The complainants failed en *438 tirely to comply. Morse was sued on his contract entered into jointly and severally with complainants to the acceptors of these drafts, and judgment was recovered against him. The accounts of Morse were only conditionally settled, and receipts expressed to be in full, only in the event of complainants complying with that condition. Having entirely failed to do so, •the original demand revived, and stands in the same situation as though no settlement bad taken place. It is» mistake in counsel to say that Morse should have sued complainants on their contract to have funds placed in the hands of acceptors; for this contract and undertaking was not to Morse, but to the acceptors, in which Morse’himself was a joint obligor.— It is clear Morse could maintain no action on this instrument. Lane and Armstrong, the acceptors, were the only persons who could sue on it. It is true that the judgment against Morse was unsatisfied at the time this bill was filed, and that, on Morse’s pa ving this judgment, on account of his suretyship for complainants, he might have maintained an action for money paid, laid out and expended for their use: but it is equally clear that complainants having entirely failed to comply with the only condition upon which Morse accepted these drafts as payment of his demand, he had a right to proceed on such demands, more especially as he shows that complainants cannot be injured by these drafts, as they are taken up by Morse, and ready to be impounded.
If Morse had brought an action at law against complainants, by laying suitable counts in his declaration on his original demands and counts for money, he might have embraced other demands from whichever source the court might consider them as most properly arising; and it would be very singular, if after complainants’ filing a bill of such a nature as this— after a reference to commissioners, andan account stated and returned without exceptions, a court of chancery to which they have thought proper to resort, on account of its being supposed to be able to do more competent justice between the parties in this case, would be governed by rules more strict and rigid.
With this view of the suhjec.t, I am of opinion that the chancellor erred in decreeing that there was sufficient proof to show that Morse was legally entitled to the benefit of this judgment and .execution thereon; and that a *439 perpetual injunction ought to have been decreed against his proceeding thereon further.
But, in proceeding to render such decree as the court of chancery should have made, I think that complainants, Head and Davis, should be decreed to pay to defendant the amount each was found to be indebted, by the report of commissioners, and that they have execution therefor, and that the decreeof the chancellor be, in all other things, affirmed.
Judges Cage and Nicholson concurred.